Jones, J.
In both cases the plaintiffs in the trial courts were telephone companies that had been es *339 tablished and were in operation, one in the village of Ashley, Delaware county, and the other seeking a franchise in the village of Cardington, and intending to operate in the outlying districts of Morrow county. The mutual company endeavored to invade this established territory, for the purpose of furnishing telephonic service, without securing a certificate of public necessity from the public service commission, relying upon the claim that none was required under Section 614-52, General Code, for the reason that the section applies only to such public utilities as operate their utilities for profit.
The chief and determinative question in this case is: Does a telephone company, operating under the mutual membership plan employed by it, under the stated facts, require a certificate of necessity for the public convenience, before it may exercise the right or franchise of owning and operating a plant for the furnishing of telephonic service in a municipality or locality where there is already in operation a telephone company furnishing adequate service ?
For the proper determination of this question it must be conceded that the invading competitive companies were corporations organized as mutual telephone companies not for profit. These latter companies seek to escape the requirement of the code section, supra, by reliance upon other sections of the code, notably Section 614-1 and subsections immediately following. These sections vest in the public service commission jurisdiction and supervisory powers over the public utilities therein defined. By Section 614-2q, General Code, this juris *340 diction was in a general way limited to every utility, corporation, company, etc., except such utilities not operating for profit. They deal with regulation and supervision of public utilities, and do not cover the field of competition which is later specifically applied to telephone companies by Section 614-52, General Code. This section reads as follows:
“No telephone company shall exercise any permit, right, license or franchise that may have been heretofore granted but not actually exercised or that may hereafter be granted to own or operate a plant for the furnishing of any telephone service, thereunder in any municipality or locality, where there is in operation a telephone company furnishing adequate service, unless such telephone company first secures from the commission a certificate after public hearing of all parties interested that the exercising of such license, permit, right or franchise is proper and necessary for the public Convenience.”
By other sections of the code (102 O. L., 549) the general assembly sought to regulate and supervise public utilities, using that term generically, and including within the definition of the term “public utilities” those telephone companies operating such utilities for profit. But by Section 614-52, General Code, the legislature specifically treated telephone companies as public utilities requiring special legislation. Telephone companies were thereby taken from the general scheme of public utility regulation and there was added and applied to this particular utility a statutory mandate not applicable to others. Having in view the public *341 convenience primarily, and the adequacy of telephone service secondarily,„ it protected the public convenience, and, incidentally, the established plant, by a special provision that no telephone company should invade a municipality or locality furnishing adequate service, without a certificate from the commission. And this the statute provides irrespective of whether the company operates for profit or not. The legislature no doubt considered that public policy required special legislation in that particular field when it sought to supervise competition in the interest of public convenience. The language of the section is plain, and we are unable to apply to telephone companies the added words, “operating their utilities for profit.” The unequivocal language of the section does not permit the implication claimed for it, and such a construction is forbidden ,by the maxim, expressum facit cessare taciturn. Any tendency to monopoly may easily be curbed by the state, which retains complete control of the situation. Its public service commission has full power to grant or withhold the certificate, as public necessity may require.
In both of the cases stated the mutual companies are of such character and scope as would stamp them, not only as telephone companies, but companies which might affect the public convenience alluded to in the act. Such being the case, the tribunal provided in the first instance for the determination 'of that fact was the public service commission of the state. We do not hold that private telephone lines,, or that even all mutual lines, shall in all cases require the certificate named. *342 Public convenience is the polestar of the act, and an established and adequate service- in a municipality or locality is the chief factor in its determination, and where, as here, these factors may be disturbed by a new and competitive telephone company, substantially affecting established service, it is necessary that a certificate be obtained, to the effect that the right or franchise is necessary for the public convenience, before such second company can exercise its rights and franchises in such occupied locality.
In each case the judgment of the court of appeals is affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Newman and Matthias, JJ., concur.